UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| MARIA VARGAS SANCHEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:26-cv-00019-SEB-KMB |
| | ) | |
| SAMUEL OLSON Director, Chicago Enforcement | ) | |
| and Removal Operations Field Office at | ) | |
| Immigration and Customs Enforcement, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
PETITION FOR WRIT OF HABEAS CORPUS**

Maria Vargas Sanchez seeks a writ of habeas corpus requiring that she be released from U.S. Immigration and Customs Enforcement (ICE) detention or, alternatively, that she receive a bond hearing. Because the undisputed facts demonstrate that Ms. Vargas Sanchez is eligible for bond, the Court grants her petition by directing that she be afforded a bond hearing or released from detention.

**I. Facts**

The parties do not dispute any material factual issues.

Ms. Vargas Sanchez entered the United States in 2003 at age 15. She did not present for inspection at a port of entry and apparently had no interaction with the United States' immigration apparatus until December 2025. Ms. Vargas Sanchez is now a single mother of two teenage children with chronic medical conditions. Dkt. 7 ¶¶ 45–49; dkt. 9-1.

On December 16, 2025, U.S. Border Patrol Agent G. Gagne saw Ms. Vargas Sanchez and a man attempting to jump-start a car on the street in Chicago. If Agent Gagne had any reason to suspect that Ms. Vargas Sanchez or the man were not lawfully present in the United States, he has

not documented that reason in his account of the incident. Nevertheless, he approached the car and asked Ms. Vargas Sanchez about her legal status. Eventually she answered that she is a citizen of Mexico, and he arrested her. Dkt. 9-1 at 7–8.

The same day, an "Authorized Immigration Officer" issued an administrative warrant addressed to: "Any immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." Dkt. 9-1 at 5. The administrative warrant states that Ms. Vargas Sanchez made voluntary statements indicating that she is a removable alien, and it "command[s]" that she be taken into custody for removal proceedings. *Id.*

Ms. Vargas Sanchez is now detained at the Clark County Jail. She has neither requested nor received a review of her eligibility for release on bond.

## II. Analysis

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Ms. Vargas Sanchez argues that her continued detention without a bond hearing violates the Fifth Amendment and the Immigration and Naturalization Act (INA). She asks the Court to order that she be released immediately or, alternatively, that she receive a bond hearing. The respondents answer that the INA not only allows but requires the government to detain Ms. Vargas Sanchez without bond; that this Court lacks jurisdiction over the government's decision to withhold bond; that Ms. Vargas Sanchez's petition is premature because she has not exhausted available administrative remedies; and that, if Ms. Vargas Sanchez is entitled to any relief, she is entitled to at most a bond hearing.

The Court finds that Ms. Vargas Sanchez's continued detention without possibility of bond violates the INA and entitles her to habeas relief in the form of a bond hearing. The Court further finds that this relief is not barred by Ms. Vargas Sanchez's decision to proceed to this Court before pursuing additional administrative relief. On this basis, the Court grants Ms. Vargas Sanchez's petition in part and denies it in part.

A.	**Detention Authority and Bond Eligibility**

Ms. Vargas Sanchez argues that her detention may only be authorized by 8 U.S.C. § 1226(a):

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. [T]he Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
>> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>>
>> (B) conditional parole[.]

The respondents answer that Ms. Vargas Sanchez's detention is not only authorized but required by 8 U.S.C. § 1225(b)(2)(A), which directs that "an alien who is an applicant for admission . . . shall be detained" for the pendency of removal proceedings. They insist that, because Ms. Vargas Sanchez has not been admitted to the United States by immigration officials, and because she opposes her removal, she is an "alien who is an applicant for admission" and therefore subject to compulsory detention under § 1225(b)(2)(A). Dkt. 9 at 7–12. This position is untenable for two reasons.

First, the respondents' interpretation of § 1225(b)(2)(A)—that every alien arrested inside the United States who seeks to remain here, no matter how long after arriving, is an applicant for

3

admission subject to mandatory detention—is legally dubious. The Seventh Circuit recently responded to this argument with skepticism. *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060–61 (7th Cir. Dec. 11, 2025) ("The question is whether § 1225(b)(2)(A) covers any noncitizen who is unlawfully already in the United States as well as those who present themselves at its borders. . . . Based upon the text and structure of the two provisions, we believe that Plaintiffs have the better argument on the current record."). Before and since, this Court and the vast majority of other district courts have rejected the government's interpretation. *See, e.g.*, *Perez Reyes v. Bondi*, No. 4:25-cv-00239-SEB-KMB, 2025 WL 3755928, at *3 (S.D. Ind. Dec. 29, 2025) ("The Court has previously determined that, considering § 1225 as a whole, the most natural meaning is that it applies to 'arriving' noncitizens attempting to enter the United States rather than undocumented aliens like Ms. Perez Reyes who have lived in the interior of the United States for years."). "As the Court has previously explained, Respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Id.* at *3 (citing *Alejandro v. Olson*, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *14–19 (S.D. Ind. Oct. 11, 2025)).

Respondents cite a smattering of contrary opinions but concede that our prior analysis "control[s] the result in this case should the Court adhere to the legal reasoning in those prior decisions." Dkt. 9 at 1–4. Respondents offer no binding authority to the contrary. Accordingly, we affirm our prior analysis and conclusions.[1]

---

[1] The respondents offer a passing reference to *Cruz Rodriguez v. Olson*, No. 1:25-cv-12961, 2025 WL 3672856 (N.D. Ill. Dec. 17, 2025), withdrawn & superseded, 2026 WL 63613 (N.D. Ill. Jan. 8, 2026), which the Court cites specifically due to its recency and its issuance within the Seventh Circuit. *See* dkt. 9 at 2. *Cruz Rodriguez* offers a thorough and thoughtful analysis of §§ 1225 and 1226, concluding that *both* provisions apply to certain aliens apprehended inside the United States. *See Cruz Rodriguez*, 2025 WL 3672856, at *7 ("Sections 1225(b)(2) and 1226 have different, but overlapping, scopes."). We find that logic

4

Second, even if Respondents' legal reasoning were more persuasive, it cannot be reconciled with the government's own actions towards Ms. Vargas Sanchez when she was arrested. After Border Patrol Agent Gagne arrested Ms. Vargas Sanchez, an "Authorized Immigration Officer" directed through an administrative warrant that she be detained for the pendency of removal proceedings *pursuant to § 1226*. Dkt. 9-1 at 5 (citing INA § 236). The government determined and documented that Ms. Vargas Sanchez was subject to arrest and detention under § 1226, not § 1225.

As we have previously found, mandatory detention and discretionary release are mutually exclusive actions. An alien cannot simultaneously be subject to mandatory detention under § 1225(b)(2)(A) and eligible for discretionary release under § 1226(a)(2); the provisions can exist harmoniously only if they apply to separate classes of aliens. *Singh v. Bondi*, No. 1:25-cv-02101-SEB-TAB, 2025 WL 3029524, at *6 (S.D. Ind. Oct. 30, 2025). The government authorized Ms. Vargas Sanchez's detention under § 1226. It cannot now argue that she is subject to § 1225(b)(2) and therefore is categorically ineligible for discretionary release. *Id.* (citing *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025); *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023)); *Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *9 (N.D. Cal. Sept. 26, 2025) ("[T]he government cannot switch tracks and subject Petitioners to mandatory detention under section 1225(b)(2) when the government has instead placed Petitioners in removal proceedings under section 1229a and released them on their

---

unpersuasive, as explained in previous decisions and discussed further below. Regardless, we share the rationale adopted by our colleague in the Northern District of Illinois that finds *Castañon-Nava* highly persuasive. *See Morales Perez*, No. 1:25-CV-14995, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026).

The Court also acknowledges *Buenrostro-Mendez v. Bondi*, which a panel of the Fifth Circuit recently decided after briefing had been complete in this case. *Buenrostro-Mendez* concludes that "seeking admission" is not limited to "arriving" noncitizens and therefore supports the respondents' position in this case. No. 25-20496, --- F.4th ---, 2026 WL 323330, at *4 (5th Cir. Feb. 6, 2026). But the Fifth Circuit's decision also is neither persuasive to us nor binding on us; instead, we defer to the Seventh Circuit's persuasive decision in *Castañon-Nava*.

5

own recognizance under section 1226(a)."); *Fornalik v. Perryman*, 223 F.3d 523, 530 (7th Cir. 2000)).

By detaining Ms. Vargas Sanchez and withholding any consideration of her entitlement to release on bond, the government is in violation of the INA in keeping her in continued custody. Thus, she is entitled to release pursuant to our issuance of a writ of habeas corpus.

**B.      Jurisdiction Under § 1226(e)**

Respondents also contend that, even if Ms. Vargas Sanchez's detention is governed by § 1226, then § 1226(e) deprives the Court of jurisdiction over her claim. This argument collapses under its own weight. Section 1226(e) precludes review of the "Attorney General's discretionary judgment regarding the application of" § 1226 to detain an alien or revoke or deny bond or parole. However, the Attorney General has not rendered a discretionary judgment under § 1226. She has not rendered any judgment at all. She has not considered the possibility of bond or parole and therefore has not revoked or denied it.

Section 1226(e) might preclude our intervention if Ms. Vargas Sanchez requested bond, an immigration judge denied her request after considering the merits, and she filed her petition for a different result. But there is no record that Ms. Vargas Sanchez has yet appeared before an immigration judge. The government has not made a discretionary decision to detain her. In fact, it insists that it has no discretion. Section 1226(e) simply has no application to our case.

**C.      Relief Available**

Ms. Vargas Sanchez asks the Court to order her immediate release. Any relief afforded through habeas corpus must be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984).

6

Ms. Vargas Sanchez argues that "forcing a detainee to wait for a hearing for days or weeks in custody when she is not lawfully detained in the first place would undermine the purpose of habeas relief," and that her detention is unlawful because she has not received consideration for bond. Dkt. 12 at 15. Ms. Vargas Sanchez maintains—and the Court agrees—that her "detention is governed by § 1226(a)." *Id.* at 12. But Section 1226(a) does not make her detention unlawful. Rather, § 1226(a) expressly allows Ms. Vargas Sanchez to be detained and grants the Attorney General discretion to release her. The government has violated her rights by refusing to consider her eligibility for release on bond—but by the act of detaining her. A bond hearing will provide an adequate remedy to that wrong.

Ms. Vargas Sanchez also argues that her immediate release is necessary because immigration judges can no longer be trusted to render fair and meritorious bond determinations. She supports her argument with an affidavit by an immigration attorney who reports seeing bond denied on dubious grounds in one immigration court on two occasions last month. The affiant further attests that other immigration attorneys corroborate his concerns. *See* dkt. 12-3.

Assuming arguendo that the affidavit is admissible, it does not provide a basis for Ms. Vargas Sanchez's release. The issuance of a writ of habeas corpus cures an unlawful detention. As previously noted, Ms. Vargas Sanchez's detention is unlawful only because she has not received consideration for release on bond. Conducting such a bond hearing will solve that problem. If the immigration judge determines to withhold bond for an unlawful reason, Ms. Vargas Sanchez's detention may be unlawful for a different reason, allowing her to challenge that action either before the immigration courts or the federal courts. Our grant of habeas relief addresses only the existing violations of law. As the Biblical adage puts it "Sufficient unto the day is the evil thereof." Matthew 6:34.

Ms. Vargas Sanchez is entitled to a bond hearing and whatever relief may flow therefrom.

D.     **Exhaustion of Administrative Remedies**

Finally, Respondents contend that Ms. Vargas Sanchez's claims are premature because she has not pursued through to completion every entitlement to a remedy available through the immigration process. More specifically, she has never formally requested a bond hearing by an immigration judge, appealed an unfavorable ruling to the Board of Immigration Appeals, or appealed an unfavorable decision by that body to the Seventh Circuit. Dkt. 9 at 6–7. Ms. Vargas Sanchez maintains that procedural exhaustion is not legally required and in any event any effort by her to exhaust administrative remedies would be futile (Dkt. 12 at 4–5) because immigration judges are bound to adhere to a BIA directive that reaches precisely the conclusion our court has rejected—namely, that all noncitizens in Ms. Vargas Sanchez's situation are subject to mandatory detention under § 1225(b)(2) and that immigration judges therefore lack jurisdiction to consider bond under § 1226(a). *Id.*

Respondents cite no statute requiring Ms. Vargas Sanchez to request a bond hearing from or with an immigration judge or to proceed to the BIA before seeking habeas relief. Lacking such a statutory mandate, the Seventh Circuit has held that "sound judicial discretion governs" whether courts should require exhaustion. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Other districts have similarly held that a petitioner was not required to exhaust administrative remedies if doing so would as here be futile, in light of the holding in *Matter of Yajure Hurtado*'s holding. *Valencia v. Noem*, No. 25-CV-12829, 2025 WL 3042520, at *2 (N.D. Ill. Oct. 31, 2025) ("Requiring Petitioner to exhaust his administrative remedies would be futile because Respondents' position is that he is *statutorily precluded* from obtaining the relief he seeks. The Court declines to require exhaustion because [t]here is nothing to indicate the BIA would change

its position [once] the BIA has predetermined the statutory issue.") (internal quotes and citation omitted); *see also Ceballos Ortiz v. Olson, et al.*, 2:25-cv-00548-MPB-MJD, dkt. 18 at 2–3, 6–9 (S.D. Ind. Nov. 19, 2025) (finding exhaustion would be futile, proceeding to merits, and ordering that petitioner be provided a bond hearing). We deem this reasoning persuasive and hold that Ms. Vargas Sanchez was not subject to an exhaustion requirement remedies because to do so would have been futile.

### III. Conclusion

The petition seeking the issuance of a writ of habeas corpus is **granted.** Respondents will have **seven days** within which to certify that Ms. Vargas Sanchez has (1) been brought before an immigration judge and appeared for a bond hearing consistent with the requirements of 8 U.S.C. § 1226(a) and related regulations, or (2) been released from detention. To the extent Ms. Vargas Sanchez seeks throughout this petition to be immediately released, the petition is **denied**. The **clerk is directed** to enter **final judgment**.

**IT IS SO ORDERED.**

Date: 2/9/2026

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com

Yllka A Seseri
Davidson & Seseri
ys@dsvisalaw.com

Esma R Tedik
Davidson and Seseri, LLC
etedik@dsvisalaw.com

9

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov